FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 15, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DENISE GIESE, O/B/O K.L.G., a minor,<br><br>                    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | NO. 2:25-CV-0033-TOR<br><br>ORDER GRANTING DEFENDANT'S BRIEF AND DENYING PLAINTIFF'S BRIEF |

BEFORE THE COURT are Plaintiff's Opening Brief (ECF No. 10) and

Defendant's Brief (ECF No. 14).  Plaintiff is represented by Matthew McGarry.

Defendant is represented by Special Assistant United States Attorney, Shata L.

Stucky.  The Court has reviewed the record and files herein and is fully informed.

For the reasons discussed below, Defendant's Brief (ECF No. 14) is **GRANTED**

and Plaintiff's Opening Brief (ECF No. 10) is **DENIED**.

ORDER GRANTING DEFENDANT'S BRIEF AND DENYING
PLAINTIFF'S BRIEF ~ 1

1

2

3

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g),

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited: the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158–59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence"

means relevant evidence that "a reasonable mind might accept as adequate to

support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated

differently, substantial evidence equates to "more than a mere scintilla but less than

a preponderance."  *Id.* (quotation and citation omitted).  In determining whether

this standard has been satisfied, a reviewing court must consider the entire record

as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER GRANTING DEFENDANT'S BRIEF AND DENYING
PLAINTIFF'S BRIEF ~ 2

1  rational interpretation, [the court] must uphold the ALJ's findings if they are

2  supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

3  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

4  ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

5  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

6  *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

7  decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

8  *Sanders*, 556 U.S. 396, 409-10 (2009).

9  **THREE-STEP PROCESS FOR CHILDHOOD DISABILITY**

10      To qualify for Title XVI (SSI) benefits, a child under the age of eighteen

11  must have "a medically determinable physical or mental impairment, which results

12  in marked and severe functional limitations, and which can be expected to result in

13  death or which has lasted or can be expected to last for a continuous period of not

14  less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner has

15  established a three-step sequential analysis to determine whether a claimant

16  satisfies the above criteria.  20 C.F.R. § 416.924(a).  First, the Commissioner

17  considers whether the child is engaged in "substantial gainful activity."  *Id.* at §

18  416.924(b).  Second, the ALJ considers whether the child has a "medically

19  determinable impairment that is severe," which is defined as an impairment that

20  causes "more than minimal functional limitations."  *Id.* at § 416.924(c).  Finally, if

ORDER GRANTING DEFENDANT'S BRIEF AND DENYING
PLAINTIFF'S BRIEF ~ 3

the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the "Listing of Impairments." *Id.* at § 416.924(c)-(d).

If the ALJ finds that the child's impairment or combination of impairments does not meet or *medically* equal a listing, he or she must determine whether the impairment or combination of impairments *functionally* equals a listing. 20 C.F.R. § 416.926a(a). The ALJ's functional equivalence assessment requires him or her to evaluate the child's functioning in six "domains." These six domains, which are designed "to capture all of what a child can or cannot do," are as follows:

(1) Acquiring and using information;

(2) Attending and completing tasks;

(3) Interacting and relating with others;

(4) Moving about and manipulating objects;

(5) Caring for [oneself]; and

(6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi).

A child's impairment will be deemed to functionally equal a listed impairment if the child's condition results in a "marked" limitation in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). An impairment is a "marked limitation" if it "interferes seriously with [a person's]

ORDER GRANTING DEFENDANT'S BRIEF AND DENYING
PLAINTIFF'S BRIEF ~ 4

ability to independently initiate, sustain, or complete activities." 20 C.F.R. §

416.926a(e)(2)(i). By contrast, an "extreme limitation" is defined as a limitation

that "interferes *very* seriously with [a person's] ability to independently initiate,

sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

### ALJ'S FINDINGS

On July 15, 2021, Plaintiff filed an application for Title XVI supplemental

security income benefits, alleging a disability onset date of November 18, 2020.

Tr. 22. The application was denied initially, and again on reconsideration. *Id.*

Plaintiff's custodial grandmother appeared at a telephonic hearing on behalf of

Plaintiff before an administrative law judge ("ALJ") on February 29, 2024. *Id.* On

May 17, 2024, the ALJ denied Plaintiff's claim, which became the

Commissioner's final decision. Tr. 36, 1.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff had

not engaged in substantial gainful activity since July 15, 2021, the application date.

Tr. 23. At step two, the ALJ found Plaintiff had the following severe impairments:

autism and obstructive sleep apnea. *Id.* At step three, the ALJ found Plaintiff did

not have an impairment or combination of impairments that meets or medically

equals the severity of a listed impairment. Tr. 24. At step four, the ALJ found

Plaintiff did not have an impairment or combination of impairments that

functionally equals the severity of a listed impairment. Tr. 26. With respect to

functional equivalence, the ALJ found that Plaintiff had the following limitations on the six domains:

(1) Less than marked limitation in acquiring and using information;

(2) Less than marked limitation in attending and completing tasks;

(3) Less than marked limitation in interacting and relating with others;

(4) No limitation in moving about and manipulating objects;

(5) Marked limitation in the ability to care for himself; and

(6) Less than marked limitation in health and physical well-being.

Tr. 27.

Thus, the ALJ concluded that Plaintiff had not been disabled under the Social Security Act since the application date of July 15, 2021.  Tr. 35.

## ISSUES

Plaintiff contends the ALJ erred in the RFC determination by improperly discounting the opinion of Phil Debroux ("Mr. Debroux"), OTR, and Kendra Zita ("Ms. Zita"), OTR.[1]  ECF No. 10 at 5.

## DISCUSSION

---

[1]    Plaintiff initially states that Plaintiff is challenging the ALJ's discounting of the opinion of Plaintiff's treating physician, Dr. Olden (ECF No. 10 at 2), however, the ALJ never mentioned an opinion by a Dr. Olden.

ORDER GRANTING DEFENDANT'S BRIEF AND DENYING PLAINTIFF'S BRIEF ~ 6

1   Plaintiff argues the ALJ's decision to reject the opinions of Mr. Debroux and

2   Ms. Zita was not substantially supported because the ALJ failed to discuss the

3   supportability factor and improperly rejected their opinions based on their

4   credentials.  ECF No. 10 at 5.

5   Under the new regulations, an ALJ must consider and evaluate the

6   persuasiveness of all medical opinions or prior administrative medical findings

7   from medical sources.  20 C.F.R. § 416.920c(a)-(b).  The factors for evaluating the

8   persuasiveness of medical opinions and prior administrative medical findings

9   include supportability, consistency, relationship with the claimant, specialization,

10  and "other factors that tend to support or contradict a medical opinion or prior

11  administrative medical finding" including but not limited to "evidence showing a

12  medical source has familiarity with the other evidence in the claim or an

13  understanding of our disability program's policies and evidentiary requirements."

14  20 C.F.R. § 416.920c(c)(1)-(5).

15  The ALJ is required to explain how the most important factors,

16  supportability and consistency, were considered.  20 C.F.R. § 416.920c(b)(2).

17  These factors are explained as follows:

18  (1) *Supportability.*  The more relevant the objective medical evidence and
    supporting explanations presented by a medical source are to support his
19  or her medical opinion(s) or prior administrative medical finding(s), the
    more persuasive the medical opinions or prior administrative medical
20  finding(s) will be.

ORDER GRANTING DEFENDANT'S BRIEF AND DENYING
PLAINTIFF'S BRIEF ~ 7

(2) *Consistency*.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 416.920c(c)(b)(2).  However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered.  20 C.F.R. § 416.920c(c)(b)(2).  An ALJ's decision for discrediting any medical opinion "must simply be supported by substantial evidence."  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

**A. Phil Debroux, OTR**

Mr. Debroux completed a form questionnaire on January 31, 2022 indicating the degree of limitation on each of Plaintiff's domains.  Tr. 1113-1115.  Mr. Debroux indicated Plaintiff having a marked limitation in acquiring and using information and explained Plaintiff needed numerous verbal cues and prompts to complete tasks and had difficulty and anxiety with novel concepts.  Tr. 1113.  He indicated Plaintiff had an extreme limitation in attending and completing tasks

noting he had difficulty staying on task and sequencing and needed to have information broken down into small chunks.  Tr. 1114.  Next, Mr. Debroux indicated Plaintiff had an extreme limitation in interacting and relating with others and noted Plaintiff was emotionally labile, aggressive with siblings, had difficulty with understanding social cues, and shut down when he felt stressors.  *Id.*  Mr. Debroux then indicated Plaintiff had a less than marked limitation in moving about and manipulating objects but did not provide a supporting explanation.  *Id.*  As for caring for himself, Mr. Debroux indicated Plaintiff had an extreme limitation and noted Plaintiff rarely talked about feelings/wants/frustrations.  Finally, Mr. Debroux indicated a marked to extreme limitation in Plaintiff's health and physical well-being and noted Plaintiff overall had poor coping skills, tended to go inward, would not share feelings or frustrations, withdraws, had difficulty with redirection and became angry quickly, and had difficulty with self-soothing.  Tr. 1115.

The ALJ did not find Mr. Debroux's opinion persuasive.

The opinions cite information in support, but much of this, such as the claimant's behavior with siblings, is not something a provider would generally possess firsthand knowledge of, but based on the grandmother's statements.  These opinions cite information that is outside Mr. Debroux's expertise.  Mr. Debroux treated the claimant for help with calming activities, forming letters, and separating from others.  The opinions are not consistent with the evidence as a whole including Mr. Debroux's own treatment notes.  These notes supported the claimant responded to treatment.  Mr. Debroux's treatment notes are fairly static.  Treatment notes from December 23, 2021, showed anxiety, fearfulness, and reserved demeanor but showed improved accuracy, arousal, and sequencing (Exhibit B9F).  The claimant's

ORDER GRANTING DEFENDANT'S BRIEF AND DENYING PLAINTIFF'S BRIEF ~ 9

trouble with a new therapist improved.  Outside mental status notes showed the claimant was alert and oriented, cooperative, and had sustained appropriate concentration (e.g. Exhibit B24F, page 13).  Ms. Spotts indicated the claimant had grossly intact memory.  Mr. Debroux cited to problems with coping skills and being withdrawn regarding physical health and well-being, but the claimant was noted as having good days when he remembered to take medications (Exhibits B24F, pages 39-41).  Observations of the claimant at school described the claimant as not arguing, losing temper, or being distractable and as adaptable (Exhibit B23F).

Tr. 32

Plaintiff first contends that the ALJ's supportability analysis was not substantially supported because the rationale that Mr. Debroux cited information that was outside of his expertise inappropriate.  ECF No. 10 at 7.  Plaintiff points to Social Security Ruling, SSR 09-2P in arguing an occupational therapist ("OT") is an acceptable source to "determine the severity of the impairment(s) and how it affects the child's ability to function compared to children of the same age who do not have impairments."  SSR 09-2P (S.S.A. Feb. 18, 2009).

The ALJ explained in her decision that under the relevant regulations, a medical opinion is a statement from a medical source, and Mr. Debroux and the other opining OTs were not considered medical sources because they were acting outside the scope of their practice as required under 20 C.F.R. § 404.1502(d) and 416.902(i).  Tr. 33.  It appears the ALJ concluded Mr. Debroux acted outside of his expertise because the bulk of his opinions were not a result of firsthand knowledge

ORDER GRANTING DEFENDANT'S BRIEF AND DENYING PLAINTIFF'S BRIEF ~ 10

1  but rather were based on Plaintiff's grandmother, Denise Giese's ("Ms. Giese"),

2  statements about Plaintiff's behavior.  Tr. 32.  But it also appears Mr. Debroux

3  relied on some objective measures through therapist directed activity during

4  weekly sessions with PLAINTIFF  *See* Tr. 870.  Thus, the ALJ erred in concluding

5  Mr. Debroux's opinion did not come from a medical source in its entirety.

6  Moreover, the Court recognizes Plaintiff's contention that the fact a medical

7  professional, in the mental health context, relies on a claimant's own subjective

8  reporting in reaching a conclusion does not alone justify an ALJ discrediting the

9  medical opinion.  *See Gallant v. Saul*, 783 F. App'x 688, 691 (9th Cir. 2019)

10  (citing *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)).

11  However, to the extent the ALJ did error, the Court finds any such errors

12  were harmless because the ALJ still provided substantial evidence in discounting

13  both the subjective reporting by Ms. Giese and Mr. Debroux's opinions based on

14  his own objective findings.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d

15  595, 602 (9th Cir. 1999) ("A physician's opinion of disability premised to a large

16  extent upon the claimant's own accounts of his symptoms and limitations may be

17  disregarded where those complaints have been properly discounted.").

18  For example, for the first domain of acquiring and using information, the

19  ALJ noted Ms. Giese "marked the claimant had limited learning in areas like

20  writing, reading and understanding money."  Tr. 31.  However, the ALJ found the

ORDER GRANTING DEFENDANT'S BRIEF AND DENYING
PLAINTIFF'S BRIEF ~ 11

evidence did not support more than a less than marked limitation

> The claimant's special education teacher indicated that the claimant had
> only slight problems in this area and that he comprehends new
> information well.  The claimant's second-grade teacher indicated that
> the claimant's reading, math, and writing were at a first-grade level but
> originally stated were at the middle first-grade level.  The claimant had
> low scores IQ scores in working memory (76) and processing speed
> (75) but a full-scale IQ of 97.  The claimant's IEP does allow for
> checking for understanding and he is given a half hour a day of special
> education and spends the rest of his time in regular classes.  Treatment
> notes described memory as grossly intact.

Tr. 31 (citing Tr. 322-330, 335-342, 296-306, 1145-1159, 1494-1515, 1528).

For the third domain of interacting and relating to others, the ALJ concluded
the evidence did not support more than a less than marked limitation.  The ALJ
noted that Ms. Giese indicated Plaintiff had trouble making friends, would only
talk to family and could not deliver phone messages, repeat stories, tell jokes
accurately, explain why he did something, or use sentences with words like
"because." Tr. 30.  However, the ALJ concluded these statements were not
consistent with the remainder of the evidence outside the home.  The ALJ then
referenced a number of records indicating Plaintiff did not have any behavioral
issues at school and was often observed having friends and interacting with others
without problems.  Tr. 30-31 (citing Tr. 1639, 298-305, 335-342, 1534-1537,
1494-1515, 322-330).  Additionally, the ALJ referenced treatment notes that
consistently described Plaintiff as cooperative.  Tr. 31 (citing Tr. 1145-1159, 1517-

ORDER GRANTING DEFENDANT'S BRIEF AND DENYING
PLAINTIFF'S BRIEF ~ 12

1523, 1474-1489).

For the fourth domain, the ALJ found that the evidence did not show a limitation in moving about or manipulating objects even though Ms. Giese indicated that while Plaintiff could dress himself, he avoided clothing with zippers, buttons, or ties.  Tr. 31.  The ALJ relied on occupational therapy notes indicating Plaintiff had below average coordination skills but still met therapy goals.  *Id.* (citing Tr. 965).

As for Mr. Debroux's own treatment notes, the ALJ found that they did not support Mr. Debroux's opinions as they indicated Plaintiff responded to treatment. The ALJ relied on a treatment record from December 23, 2021, after Plaintiff had been attending OT treatments with Mr. Debroux twice a week for nine months, that reported Plaintiff as demonstrating good executive functioning skills and improved accuracy/arousal/sequencing.  Tr. 1094.  The same treatment notes also reported Plaintiff as able to perform most of his functional goals.  Tr. 1095-1096.  The Court finds that the ALJ adequately addressed the supportability factor by providing substantial evidence to support discounting Ms. Giese's subjective reporting and concluding Mr. Debroux's own treatment notes did not support his opinions.

As for consistency, Plaintiff argues the ALJ failed to explain how other evidence in the record was inconsistent with Mr. Debroux's opinions and failed to

discuss how the opinions were consistent the teacher questionnaires of Kristen Savage.  ECF No. 10 at 11-12.  The ALJ provided an example of outside mental status notes reporting Plaintiff as alert and oriented, cooperative, and had sustained appropriate concentration.  Tr. 32 (citing Tr. 1528).  The ALJ specifically referenced Mr. Debroux's opinion that Plaintiff had problems with coping skills and being withdrawn regarding physical health and well-being as being inconsistent with other evidence indicating Plaintiff had good days when he remembered to take his medication.  Tr. 32 (citing Tr. 1554-1556).  Finally, the ALJ cited to Plaintiff's Individualized Education Program ("IEP") plan from April 2023 reporting Plaintiff as adaptable, cooperative, respectful, non-argumentative, and never losing his temper which was inconsistent with Mr. Debroux's opinion of an extreme limitation in the domain of interacting and relating with others.  Tr. 32 (citing Tr. 1494-1515).  Substantial evidence supports the ALJ's conclusion that Mr. Debroux's opinions were inconsistent with other evidence in the record.

The ALJ's failure to discuss the consistency of Mr. Debroux's opinions with Ms. Savage's questionnaires was also not error as Plaintiff argues.  The ALJ discussed both of Ms. Savage's questionnaires in her decision and took them under consideration.  Tr. 34.  The ALJ also considered a questionnaire submitted by Plaintiff's special education teacher, Rachel Rieber ("Ms. Rieber"), that reported minimal limitations in all functional areas contrary to Ms. Savage's second

questionnaire.  Tr. 322-330.  However, at the time she completed the questionnaire, Ms. Rieber reported that she had typically spent 90 minutes per day working with Plaintiff and had been for two years whereas Ms. Savage reported that she had only known Plaintiff for six months at the time she completed the second questionnaire. Tr. 322, 335.  Moreover, as Defendant points out, the Court must affirm an ALJ's decision "[w]here evidence is susceptible to more than one rational interpretation" and "may not substitute its judgment for that of the [ALJ]."  *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022); *Flaten v. Secy'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  Therefore, the ALJ provided substantial evidence in addressing the consistency factor in discounting Mr. Debroux's opinion.

## B. Kendra Zita, OTR

Plaintiff also initially argues that the ALJ's evaluation of Ms. Zita's opinion was not supported by substantial evidence because she failed to discuss the supportability factor and improperly rejected the opinion based on Ms. Zita's credentials.  However, Plaintiff does not identify any error in the ALJ's assessment of that opinion with specificity other than noting Ms. Zita "opined Plaintiff would have *marked* limitations with interacting with others—an opinion more closely aligned with the extreme limitations in this area opined by OTR Debroux."  ECF No. 10 at 12.

The ALJ found that Ms. Zita's opinions "were not consistent with the

ORDER GRANTING DEFENDANT'S BRIEF AND DENYING PLAINTIFF'S BRIEF ~ 15

evidence including Ms. Zita's own treatment notes." Tr. 33. The ALJ then cited to Ms. Zita's treatment notes in support. This discussion goes directly to the supportability of Ms. Zita's opinion. Additionally, as the Court previously noted, any error in the ALJ rejecting the opinions from occupational therapists as acting outside the scope of their expertise is harmless where the ALJ still provided legally sufficient reasons in rejecting the medical opinion. The ALJ already provided substantial evidence in discounting Ms. Giese's subjective reporting and Plaintiff does not identify any error in the ALJ's findings that Ms. Zita's opinion was inconsistent with the remaining record. Therefore, the Court does not find any error in the ALJ's assessment. *See Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) (stating court will only "review . . . issues which are argued specifically and distinctly in a party's opening brief").

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Brief (ECF No. 14) is **GRANTED**.

2. Plaintiff's Opening Brief (ECF No. 10) is **DENIED**.

The District Court Executive is directed to enter this Order, enter judgment for Defendant, furnish copies to counsel, and CLOSE the file.

DATED September, 15, 2025.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S BRIEF AND DENYING
PLAINTIFF'S BRIEF ~ 16